Next case is In Re Swanson and Guyer, 2007, 1534. Mr. Asher May it please the court, Robert Asher for the Real Party and Interests Hermotics on behalf of Swanson et al. I'm going to address several arguments from the briefs. First that the Deutsch reference does not present a substantial new question of patentability because it was already examined in the Patent and Trademark Office in the original prosecution and was the subject of a final judgment of the United States District Court in California that dealt directly with anticipation over Deutsch. Are the issues the same or different? Are the issues different? The issues are the same, your honor. Issues deal with the Deutsch reference. The issues deal with the same statutory basis, section 102. And both the court and the Patent Office are dealing with the validity of the patent. But section 303 speaks to whether or not the office not only cited it but also considered the reference. Was Deutsch really considered by the Patent Office in any respect? Yes, Deutsch was definitely considered by the Patent Office. It was cited in a rejection. What did they say about Deutsch? What did they say about Deutsch? There was a rejection of a claim that identified three or four different references that made up a rejection on the basis of obviousness under 103. And the claim in question dealt with similar steps to the ones in the claim that actually one of four or five different patents that was cited was a string cite, wasn't it? That's the only reference of Deutsch. That was the only reference of Deutsch. The Patent Office said it would be obvious that any known reaction within reasons could be incorporated in a modified method and apparatus of either Morrison and Bauer. As see, for example, the immunity reactions of Rubenstraut, Bauer et al., Brown et al., and Deutsch et al. So Deutsch was a fourth reference. Was that really a consideration of Deutsch? Well, I don't think they threw it in palmetto. I think they had to read Deutsch and understand Deutsch and make the rejection, at which point they had a collection, a small collection of references that they had considered in a rejection or in the rejections during the prosecution. Then, when a later claim was submitted, which the Patent Office determined should be allowable, they necessarily had to consider that small collection of patent references that it had used in the rejections during the prosecution. Was it recited? Excuse me? Was it recited by the Patent Office? No, the claim was allowed. Deutsch was not recited, the claim was allowed. In spite of Deutsch or in spite of Brown or in spite of Bauer? Which reference was it that actually allowed it? References don't allow the claim. The examiner allows the claim. Which reference was argued against to allow the claim? Was there an argument in the prosecution history against Deutsch? Yes, Deutsch had to be overcome with respect to that initial rejection. No, I'm asking in the prosecution history itself. Is there an argument that was made by the patentee against Deutsch? Not on this specific Claim 22 that we're talking about here. Claim 22 was submitted as a new claim for the Patent Office to examine and we presume necessarily that when it issued its allowance, it made the determination that it was patentable over. But what argument was made by the patentee to overcome Deutsch? That's what I'm trying to figure out. They didn't need to argue because the claim was allowed. There was no argument made, there was no reference made to Deutsch except for that one reference that I just read in the entire prosecution history. That was the only rejection made on the basis of Deutsch. But that was the only reference made to Deutsch in the prosecution history. It was that rejection, yes. The only reference made to Deutsch in the prosecution history was that particular sentence. Any other references to Deutsch in the prosecution history? I do not know, Your Honor. It's not in the record, so I presume that if it were, it would probably be included. Fair enough. Why wasn't Weiss proper anticipation? Okay, there's two reasons. With respect to Claim 22, Claim 22 requires detecting, quote, in the reaction zone. It specifically calls out, later in the claim, zones, quote, in which detection occurs. Can't that be loosely interpreted, in the reaction zone? Can it be loosely interpreted? Yeah. No, I think the standard is broadest reasonable interpretation, Your Honor. And I think the term, in, is fairly understood as being within the bounds of the reaction zone. And the claim repeats the use of the term, in, twice in that claim. The issue that we face here may turn on the meaning of reaction zone itself. The, this term, reaction zone, was fairly well understood by the examiner and the board during prosecution. The reaction zone is that area on the medium that contains the immobilized reactant. Well, with respect to that issue, what do you say in response to the argument that the specification makes clear that the reaction zone, the reaction does not have to occur in the reaction zone, but it can, and I'm referring to column 8, lines 60 through 65, that one may detect the presence or absence of the chemical in a reaction zone by observing whether a solid reaction product has settled upon the succeeding spacer layer. What's your response to that argument? That sentence begins with, in other tests. And that particular description is not covered by the claims in this case. You say that is outside of the scope of the invention? Yes, Your Honor. It says there that one may detect presence or absence by observing upon the succeeding spacer layer. There's not other tests performed pursuant to the invention, is what you're saying? Well, we're only dealing with the claims that were allowed, not necessarily all the claims or inventions that were being pursued when the application was filed. So this comes from the specification. The claims that the applicant was able to get through the patent office all have that limitation that detecting takes place in the reaction zone. And it's not just the first portion of Part C, but it goes on to reemphasize that the number of zones in which detection occurs. So it's clear that the claims that were allowed require the detection to take place in the reaction zone, and that a reaction zone should be interpreted as we understood with the examiner that it would be the place where there is location of the immobilized reactant. Next point you're going to get to is labeling. Correct, Your Honor. So Claim 23 deals with... I don't see labeling defined in your patent. That's because it's a term that was well understood by those of ordinary skill in the art, Your Honor, and the term labeled was used in the patent. And to the extent it's used, it referred to creating a new entity or product. It compared an analyte derivative as being a labeled analyte. There's mention of a labeled form of the analyte. There's mention of labeled antibodies. So those things come from the specification, and so a label creates this new entity. Weiss operates in a totally different manner. Weiss has this indicator dye which is adsorbed to the reactant. And this dye can fall off. Why isn't that a label, the indicator? Because it can fall off or it can be attached. And indeed, the basis of the testing done by Weiss is, does it fall off or does it not fall off? Whereas a label is firmly attached to identify what it's attached to. So the operation... and Weiss... Maybe Weiss is simply an ineffective label. No, it's a very... Well, whether it's very effective or effective at all, whether even it works is a question. But Weiss intended its invention to operate by detecting whether this dye falls off or is attached. And one looks at the moving front of fluid to see if the dye is carried away or not. Weiss does not call that dye a label. The only one who calls it a label is the patent office. Well, Swanson doesn't talk about a label either until a claim. Well, no, a label... Like I said, it's right in the abstract. For example, books about analyte derivatives were labeled analyte. But it's only the patent office that calls it a label. And the patent office has absolutely no evidentiary support for the proposal that one of ordinary skill in the art would consider what is found in Weiss to be a label. The declaration of Dr. Gordon set forth that the Weiss does not disclose labeling. It's only a transiently attached absorption. What is the full scope of the term labeling? Is it just covalent bonds? Or what, in your view, does it encompass labeling? What form of attachment is it? It's a firm bond. It certainly has to maintain the bond throughout the test. Are you talking about covalent bonds? I believe covalent bonds is an example. Right. And what else? That's what I'm trying to get at. I don't know of any other examples on the record. The way you present this is that there is a very clear understanding in the art of what labeling is. So I'm looking for a kind of encompassed, closed definition of labeling from you, other than just, you know, attached firmly. Other than attached firmly. Well, attached firmly throughout the... How firmly? How firmly? Will hydrogen bonding suffice? I'm... That's not a part of the record. I'm not qualified to answer that question. Mr. Rasher, if we find that the Deutsch does raise a substantial question of patentability, do we need to get to Weiss at all? Yes, Your Honor. Do you have to deal with the rejections over Weiss as well as the rejections over Deutsch? We need to reach both. Because different claims are involved, right? Well, there are different rejections, for one thing. Deutsch deals with claims 22, 23, and 25. Weiss only dealt with 22 and 23. 24 is dependent, so that would fall, right? Along with the others? No, 24 I think falls with Deutsch. So as long as there's no substantial new question of patentability, 24 would survive, Your Honor. I'll save it. Ms. Kelly. Good morning, Your Honors. May it please the Court. Under the broadest reasonable interpretation, which is the interpretation the Patent and Trademark Office is required to give, somatics claims are anticipated by either of Deutsch and Weiss. I will begin with Weiss simply because Your Honor seemed to have more questions about Weiss. They are not, as I understand it, and this goes back to the questioning you were just doing, they don't all cover all the claims at issue, correct? Deutsch anticipates all of the claims but one, and Deutsch and Tom make that claim obvious. Weiss anticipates only claims 22 and 23. But Deutsch would cover all of the claims? Deutsch and or Deutsch and Tom, yes, correct. If that's where you wanted to get on. Deutsch and Tom cover 20. Which claim is covered by Deutsch and Tom, I'm sorry? Deutsch and Tom cover the claim related to the use of enzyme labels. That's 24? That's 24. But Weiss doesn't cover anything that Deutsch doesn't cover, correct? I should have put the question that way. I guess I'll take it that you want to start with Deutsch. So we'll begin with Deutsch. The difference between Deutsch and the claims on appeal if you consider it a difference, which the PTO really doesn't, is that you have this addition of developing fluid. And as the board found, these claims reside comprising. So the addition of developing the fluid is perfectly permitted by these claims which are open to additional steps. And even if you look to for example, Swanson's specification you'll see that Swanson the word test solution is never defined and there's nothing in the record or Swanson's patent that says the test solution only contains the analyte. If you look to Swanson's own specification at column 9, that's page A60 of the record, and you look from lines say 10 through 20 you'll see that many things are in that test solution along with the analyte. In their example where they're using horseradish peroxidase bound to antibody as their reactant they discuss having glucose, catalase, odiancinidine as well as many other things that will actually act as a developing fluid. Many things that will be used by the enzyme that's bound to their antibody in the reaction zone to develop to produce the color that one is supposed to see when this reaction is performed. So clearly the board wasn't going beyond reason to suggest that other things, the test solution could contain other things or be combined with other things vis-a-vis the inclusion or the recitation of the word comprising in those method clients. So the fact that Weiss uses this developing solution does not preclude anticipation in this case. Pardon? I'm sorry, I meant Deutsch. I apologize, your honor. What about the substantial new question with respect to Deutsch? Well, the statute in question here specifically says that the director may cite in re-examination prior art that has already been considered by the office. And as your honors noted this Deutsch was cited as a tertiary reference along with two other references merely to show that immunoassays that immunoassays can be used in the sorts of tests described by Morrison and Bauer and Porafoy if I'm pronouncing those names correctly. And so really Deutsch was not being cited for the same purpose nor was it being cited against the same claims. And that the clear and convincing standard of evidence that's required because of the presumption of validity is Congress' belief that the Patent Office does a very good job. But Mr. Asher pointed out that the claims were allowed after Deutsch was cited. Does that make any difference? There was no argument on Deutsch? There was no statement by the Patent Office on Deutsch? What happened although it's not in the record is Swanson overcame the primary references in that issue in that case and then Claim 22 was added. How do we know that? Neither party thought of that question and I'm sorry that wasn't raised before the board. Neither of us thought of that in our brief and so we don't have that included in our record. The primary references were overcome and then Claim 22 was added because I believe that's the sequence of events. I believe that's the sequence of events and so Deutsch was not raised against Claim 22.  obviously if a reference is cited in that respect and then recited again to eventually reject the claims that were reconsidered by the Patent Office I think it would be incumbent to put the entire record before the court so that at least we know exactly what went on with respect to the prosecution history first time around. Let me ask you a question that has bothered me. Was the Article 3 argument made before the Patent Office? No. It was never raised before the Patent Office? No. To the best of my recollection the separation of powers argument was never made. So it's a new argument before us? Yes. When is there not a substantial new question of patentability if under the current if a reference is cited which was never cited before obviously there's a new question of patentability. Now if the reference was previously cited there still is a new question of patentability. When is there not a new question of patentability under the law today? I would say when the reference was cited for substantially the same reason that's being raised by the director or by a third party as it was in the original prosecution and here that isn't the case. It was being cited against a different claim for a different purpose. In that case it was just cited along with two other references as generic examples of immunoassays that could be applied to the methods disclosed in Bauer, Morrison and Here it's being cited as a primary reference in the anticipation case it's the only reference to show each limitation of the claims on appeal and with respect to the argument that this court has agreed with Swanson or Somatic's claim construction that the developing solution is precluded that is incorrect. The district court never reached that issue Sintron did not in the case below did not urge that particular claim construction until after the jury had already reached its verdict. The court below stated, expressly stated this issue hasn't been briefed so I'm not going to address it when the federal circuit looked at the issue on appeal, the federal circuit noted that Sintron hadn't urged the issue and therefore since they didn't raise it properly and the district court never considered it, there really wasn't clear and convincing evidence, a standard again that doesn't apply during re-examination, there wasn't clear and convincing evidence that that claimant's limitation was not met by Deutsch's developing fluid. Ms. Kelly, let's get back to Weiss which is where you wanted to begin and tell us about in the reaction zone and whether a label has to be covalently attached Well, first I'd like to point out that the board expressly stated that its affirmance was not based, although it had decided that the reaction zone could include the areas adjacent to the reaction zone its affirmance was not based on that construction and that is in the board's decision on page A13 in footnote 5 But that language is in the claim and if Weiss does its work outside the reaction zone then why does it anticipate Well, Weiss again, the board's decision isn't based on that construction and Weiss does in fact in the case where the dye is affixed Weiss does cause detection to take place within the reaction zone So in that example where the dye is affixed by the analyte binding to the reactant so you have your reactant here in the reaction zone and where the reactant is bound defines the reaction zone you have your analyte coming in and binding to that and you have, let's say my thumb represents the dye, now the dye is affixed so you have your reactant, your analyte and your dye all in one place, they're all within the reaction zone, so you in fact are a user is in fact detecting within the reaction zone and if you look to the representation of this, the illustration that Cermatics provided during re-examination and that is in the record of page A71 this is a different drawing than they provided to this court but this is the drawing that they provided to the board, to the PTL rather if you look at their illustration of Weiss there's an acknowledgement here when you look to Part B, I'll give your honors a moment to reach that page A71, you'll see that they show even here in their drawing where hematoxin indicator dye is fixed and they even have written here visually observed that that's occurring next to the binding pair within the reaction zone which they've shown here as their hatched square again this is different than the drawing they provided to the court in their brief, so there's even an acknowledgement by Swanson when we're talking about fixed dye which is one of the two alternatives represented in Weiss, that that is occurring within the reaction zone even where, and the examiner had findings and the board found that Swanson had not rebutted those findings that even where dye is not fixed and would move forward with the solvent front that one ordinary skill in the art of use would be able to detect the diminishment in color, the reduction in color that occurs within the reaction zone and Swanson has continually asserted that one would only be able to look to see, or I shouldn't say only, they've said that one would only be able to look to the solvent front to see whether dye was or wasn't present in the solvent front but that's one of two possibilities, one could look to the zone itself and that's what the examiner found and see whether the color changes or does not change within the reaction zone itself. What about labeling? As far as labeling is concerned, as the board noted there's no definition of the term labeling within the specification and so there really is no evidence of record that for the variety of labels encompassed by the term chemical malignity or that could potentially be covered by the term chemical malignity there was no evidence that all of those must be covalently bound and under the broadest reasonable interpretation under the broadest reasonable interpretation the board found that adsorbed dyes met that limitation. If you look to Swanson's specification it says that any analyte any reactant, any indicator can be used, I mean they're not limiting it and if that really was their belief during re-examination they had the opportunity to say covalently labeled, they had the opportunity to insert those words, I mean that's why the PTO gives the broadest reasonable interpretation because the applicant or in this case the patentee has the opportunity to amend their claims. If their belief was that everyone at Ordinary Skill NARC knows that it's covalent, they wouldn't have limited it wouldn't be limiting their claims to just insert those words but they chose not to do that and the PTO believes that they need to live with that choice of wanting their claims to be broad and the argument that was made to the PTO that labeling should be given the broader rather than the narrower definition was there any basis, what was the basis for that argument? The argument that the appellant was making is that there was simply, the PTO in effect made it up there was no basis in the evidence or otherwise what was presented to the PTO by way of a reason that the PTO should conclude that the broader rather than the narrower was right? Swanson presented three pieces of evidence they presented Clalin and Mirachi which are both examples showing an enzyme label being covalently bound to an antibody. So those were basically redundant of one another and they also presented the Gordon declaration which just merely states that one of Ordinary Skill NARC would assume that a label was only covalently bound Well, with respect to Clalin and Mirachi, what the board found and I think properly so, is that it may very well be that when you're talking about labeling an antibody with an enzyme that all of the time we're talking about a covalent bond but that would refer only to dependent claims which WISE is not being cited against WISE is not being cited against Claim 24 WISE is being cited against Claim 23 which isn't limited to enzymes, which isn't limited to radio labels it's limited to it's broader, it's chemical novenities which has not been defined by Swanson so, and additionally WISE is one of Ordinary Skill NARC WISE by virtue of its patent and the fact that he's talking about the same sorts of assays where we're taking an analyte and a reaction is one of Ordinary Skill NARC and so at least WISE thought that dyes could be used as labels, or to label as an indicator I believe WISE uses the word detector and Swanson uses the word indicator Thank you Ms. Kelly I think your time has expired Dr. Asher has his rebuttal time Your Honor, the amendment of the Substantial New Question of Patentability statured in 2002 was certainly not made for the purpose of diminishing the Substantial New Question of Patentability Re-examination was instituted in part to reinforce investor confidence in the validity of patents But the amendment was intended to overrule the decision of ours to loosen up re-examination Yes, well the policy that was being performed at that time was that if a reference appeared in the patent if it appeared in the record of the patent it could not be used in re-examination The only thing that the statute said in the amendment was that that could not be the rule But that doesn't mean that if a reference is used in a rejection that one should ignore it and should go ahead with a re-examination Re-examination is supposed to reinforce investor confidence in the validity of patents not to destroy confidence in the decisions of our courts nor to allow harassment of patent owners by a patent and trademark officer with a repeated recitation of previously considered references That's what's happening here? The issue of the Article 3 issue was raised in the oral argument before the Board of Appeals They gave one sentence response to it in their opinion but it was raised and discussed before the Board and it would, in our view create a severe constitutional dilemma for the executive agency to render null and void a decision of an Article 3 court Since So There would be nothing wrong and indeed it should be given teeth It should not be diminished They didn't wipe it out with their amendment They stated so in the legislative history and so we think if a reference is cited in a rejection it should not be fair game for a re-examination Thank you, Mr. Asher Is there one more brief point you wanted to make? As to Weiss, that A71 that she pointed to was the requester's submission It was not our submission and the Weiss reference speaks for itself as to what is liable and whether it was looking in the reaction zone or not Thank you The case will be taken on revising All rise